IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MERRICK STEDMAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-21-447 |
| CASEY M. CAMPBELL, WARDEN,[1] | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Casey M. Campbell's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 11). The Motion is ripe for disposition, and no hearing is needed. See Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will grant the Motion, which it construes as one for summary judgment.

### I.   BACKGROUND

**A.   Stedman's Allegations**

Self-represented plaintiff Merrick Stedman is an inmate housed at the Roxbury Correctional Institution in Hagerstown, Maryland ("RCI"). (Compl. at 1, ECF No. 1).[2] Stedman brings this action against Casey M. Campbell, the former Warden at RCI, alleging violations of his constitutional rights to freedom of religion. (Id.).

---

[1] The Court will direct the Clerk to correct Defendant Campbell's name as provided in the above caption.

[2] Citations to page numbers in the Complaint refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

Stedman claims that Campbell violated the Establishment Clause of the United States Constitution by allowing inmates to watch Christian television channels without providing programming regarding other religions. (Id. at 2). Stedman states that the DirecTV service, which is available twenty-four hours a day, includes the following channels: NBC, FOX, ABC, WUSA, MPT, WDCW, WDVM, ION, ESPN, ESPN2, TBS, CNN, TNT, A&E, AMC, History, SFSY, Telemundo, BET, USA, FX, Discovery, Univision, TBN, Enlace, Hillson, POSI TV, and Weather. (Mot. Opp'n Def.'s Mot. Dismiss Alternative Summ. J. at 2, ECF No. 16). Stedman alleges that four of these channels televise Christian programming and programming regarding non-Christian religions is not available. (Id. at 2–3). Thus, Stedman contends that "[o]ne can only surmise that . . . the State exclusively promotes only Christianity." (Id. at 3).

**B.     Campbell's Response**

According to Campbell, RCI offers cable television twenty-four hours a day, in addition to Netflix movies and shows. (Decl. Jane Reinmuth at 1, ECF No. 11-2). These programs are available to RCI inmates on televisions in their cells and on the tier. (Id.). Further, RCI has an internal television channel where inmates from different religious groups at the prison are welcome to record ten-minute sermons. (Decl. Daniel J. Fox ¶¶ 3, 4, ECF No. 11-3). Messages are recorded on Wednesdays and most religious groups, including Muslim groups, send a speaker. (Id. ¶ 5). Religious sermons recorded by these various groups are usually aired on Fridays, Saturdays, and Sundays. (Id. ¶¶ 6, 7).

C.     **Procedural History**

Stedman filed his Complaint on February 22, 2021. (ECF No. 1). The Complaint alleges that Campbell violated the Establishment Clause of the First Amendment, as well as Stedman's rights under the Fourteenth Amendment, by "facilitating the viewing of ONLY Christian network[s]" via the DirecTV programming at RCI. (Compl. at 3). Stedman states that he cannot watch any Rastafarian or Muslim channels and believes the State "is telling [him] that only . . . Christianity is right." (Id.). Stedman seeks injunctive relief, namely the replacement of the Christian channels with educational content, and $250,000 in punitive damages. (Id. at 3). On August 9, 2021, Campbell filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 11). Stedman filed his Opposition on October 25, 2021. (ECF No. 16). To date, Campbell has not filed a Reply.

## II.     DISCUSSION

A.     **Standard of Review**

1.     **Conversion**

Campbell styles his Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. "A motion styled in this manner implicates the Court's discretion under Rule 12(d) . . . ." Pevia v. Hogan, 443 F.Supp.3d 612, 625 (D.Md. 2020). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby

3

converting the motion, or to reject it or simply not consider it." Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: 1) notice and 2) "a reasonable opportunity for discovery." Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)). The Court "does not have an obligation to notify parties of the obvious." Laughlin, 149 F.3d at 261.

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To successfully raise the need for additional discovery, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified

4

reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (internal citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Despite these holdings, the Fourth Circuit has indicated that there are some limited circumstances in which summary judgment may be premature, notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 244–45 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C. Cir. 1988))

As required by Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), the Court notified Stedman of his right to respond to Campbell's Motion and advised that he may file affidavits, declarations, and exhibits along with his response. (See ECF No. 12). Stedman did not submit a Rule 56(d) affidavit or otherwise express a need for discovery. Accordingly, the Court will construe Campbell's Motion as a motion for summary judgment and will consider documents outside of Stedman's Complaint.

### 2.  **Summary Judgment**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant only if there is a genuine dispute as to those facts, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and, supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material

fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) ("The existence of an alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment, unless the disputed fact is one that might affect the outcome of the litigation."). Whether a fact is considered to be "material" is determined by the substantive law. Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Id. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Fed.R.Civ.P. 56(c)).

**B.**   **Analysis**

Stedman asserts that Campbell facilitated the viewing of Christian channels to the exclusion of other religions, thus violating the Establishment Clause of the First Amendment. (Compl. at 2–3); see also Lee v. Weisman, 505 U.S. 577, 580 (1992) (recognizing that "the Religion Clauses of the First Amendment [are] provisions the

7

Fourteenth Amendment makes applicable with full force to the States"). "The Establishment Clause prohibits state action with a sectarian legislative purpose or with the primary effect of advancing religion, including fostering an 'excessive government entanglement' with religion." Glassman v. Arlington Cnty., 628 F.3d 140, 146 (4th Cir. 2010) (quoting Lemon v. Kurtzman, 403 U.S. 602, 612–13 (1971)). "[A]t a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" Lee, 505 U.S. at 587 (quoting Lynch v. Donnelly, 465 U.S. 668, 678 (1984)).

Lemon "provid[es] the governing test in Establishment Clause challenges." Van Orden v. Perry, 545 U.S. 677, 686 (2005). In Lemon, the Supreme Court set forth the following three-part test: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." 403 U.S. at 612–13 (citations and internal quotation marks omitted) (quoting Walz v. Tax Comm'n, 397 U.S. 664, 668 (1970)).

Stedman's claim here is similar to one that was presented and rejected in Henderson v. Berge (Henderson I), 362 F.Supp.2d 1030, 1033 (W.D.Wis. 2005), aff'd sub nom. Henderson v. Frank (Henderson II), 190 F.App'x 507 (7th Cir. 2006). In Henderson I, the prisoner plaintiff alleged a violation of the Establishment Clause when the prison provided television programming from Dish Network that consisted of PBS, MSNBC, The Discovery Channel, The History Channel, two audio channels, and a twenty-four-hour,

Christian-oriented religious channel, but no other religious channels. 362 F.Supp.2d at 1031–32. After applying the Lemon test, the court granted summary judgment in favor of the defendants. Id. at 1033–34.

First, the court noted the prison had a secular purpose in broadcasting the Christian channel to the extent that its television programming merely facilitated opportunities for inmates to engage in the free exercise of religion. See id. at 1033 (finding that in its requirement of neutrality, "the Establishment Clause does not require the government to be oblivious to the burdens that state action may impose upon religious practice and belief," but rather, "there is ample room under the Establishment Clause for benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference" (citing Madison v. Riter, 355 F.3d 310, 317 (4th Cir. 2003)) (cleaned up)). Second, the court found that "[p]roviding only one satellite channel with religious programming did not have the effect of advancing one religion over another" because although "[a] prison is not permitted to favor a particular religious belief . . . it need not provide identical facilities or personnel for every religious group within a prison." Id. Third, the court concluded that "providing religious programming over the facility's television is not the 'kind' of entanglement forbidden under the third test of Lemon, but rather a means by which defendants can carry out their responsibilities under the free exercise clause of the First Amendment." See id. at 1034. The court added that the Constitution does not "require complete separation of church and state; it affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility towards any." Id. (quoting Lynch, 465 U.S. at 673)).

9

On appeal, the United States Court of Appeals for the Seventh Circuit affirmed the grant of summary judgment in the defendants' favor, stating:

> Although the Establishment Clause prohibits the government from favoring one religion over another, that Clause does not require a prison to provide identical worship opportunities for every religious sect or group. A prison is required only to afford all prisoners "reasonable opportunities" to exercise their religious freedom. [The prison] provided non-Christian and non-religious television programming in addition to the Christian programming. It also provided a variety of other religious accommodations, including library books related to [plaintiff's] religion. Further, there is no evidence that [the prison] forced or even encouraged Henderson to watch Christian programming; inmates could change the channel or turn off their televisions at any time. As a result, [the prison] has not violated the Establishment Clause.

Henderson II, 190 F.App'x at 509–10 (citations omitted).

The Court finds the reasoning of the Henderson courts persuasive and, accordingly, finds that RCI has not violated the Establishment Clause. Like the prison in Henderson I and Henderson II, RCI satisfies the first and third factors of Lemon because it has a secular purpose in broadcasting Christian channels through its cable service subscription: to facilitate opportunities for inmates to engage in the free exercise of religion. As to the second factor, RCI is not required to provide identical worship opportunities for every religious sect or group. In any event, although its package of channels includes only Christian religious programming, RCI has an internal television channel where inmates from various religious groups are invited to record sermons, contradicting Stedman's allegation that RCI was advancing Christianity over other religions.

Accordingly, the Court finds that Stedman has failed to introduce sufficient evidence to allow a reasonable jury to find that RCI violated the Establishment Clause. The Court will thus grant Campbell's Motion and enter judgment in Campbell's favor.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Casey M. Campbell's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 11). A separate Order follows.

Entered this 28th day of March, 2022.

                                                  /s/  
                                        George L. Russell, III  
                                        United States District Judge